# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>SOUTHERN FOODS GROUP, LLC, *et. al.*[1] | Chapter 11<br><br>Case No. 19-36313 (DRJ)<br><br>(Jointly Administered)<br><br>(Pending in the United States Bankruptcy Court for the Southern District of Texas, Houston Division) |
| Jose Guzman-Matias, *et. al.*<br><br>            Plaintiffs,<br><br>            v.<br><br>Suiza Dairy, Corp., *et. al*.<br><br>            Defendants. | Case No. ____<br><br>(Removed from the Commonwealth Court of Puerto Rico, Court of First Instance, Superior Court, San Juan Part) |

## NOTICE OF REMOVAL

**TO THE HONORABLE COURT:**

    **PLEASE TAKE NOTICE** that defendant Suiza Dairy, Corp. (the "Suiza Dairy" or

"defendant"), by its undersigned counsel, pursuant to 28 U.S.C. § 1452(a), removes the consumer

---

[1] The Debtors in these Cases, along with the last four digits of each Debtor's federal tax identification number, are: Southern Foods Group, LLC (1364); Dean Foods Company (9681); Alta- Dena Certified Dairy, LLC (1347); Berkeley Farms, LLC (8965); Cascade Equity Realty. LLC (3940); Country Fresh, LLC (6303); Dairy Information Systems Holdings, LLC (9144); Dairy Information Systems, LLC (0009); Dean Dairy Holdings, LLC (9188); Dean East II, LLC (9192); Dean East, LLC (8751); Dean Foods North Central, LLC (7858); Dean Foods of Wisconsin, LLC (2504); Dean Holding Company (8390); Dean Intellectual Property Services II, Inc. (3512); Dean International Holding Company (9785); Dean Management, LLC (7782); Dean Puerto Rico Holdings, LLC (6832); Dean Services, LLC (2168); Dean Transportation, Inc. (8896); Dean West II, LLC (9190); Dean West, LLC (8753); DFC Aviation Services, LLC (1600); DFC Energy Partners, LLC (3889); DFC Ventures, LLC (4213); DGI Ventures, Inc. (6766); DIPS Limited Partner II (7167); Franklin Holdings, Inc. (8114); Fresh Dairy Delivery, LLC (2314); Friendly's Ice Cream Holdings Corp. (7609); Friendly's Manufacturing and Retail, LLC (9828); Garelick Farms, LLC (3221); Mayfield Dairy Farms, LLC (3008); Midwest Ice Cream Company, LLC (0130); Model Dairy, LLC (7981); Reiter Dairy, LLC (3675); Sampson Ventures, LLC (7714); Shenandoah's Pride, LLC (2858); Steve's Ice Cream, LLC (6807); Suiza Dairy Group, LLC (2039); Tuscan/Lehigh Dairies, Inc. (6774); Uncle Matt's Organic, Inc. (0079); and Verifine Dairy Products of Sheboygan, LLC (7200).

class action commenced against it by plaintiffs Mr. José Guzmán-Matías (deceased) and Mr. Rafael Juarbe-De Jesús ("plaintiffs"), by themselves and on behalf of a class consisting of all natural persons and residents and domiciled in Puerto Rico, who purchased and paid for fresh Grade A milk manufactured, pasteurized, elaborated, processed and sold by Suiza Dairy and Vaquería Tres Monjitas, within the geographical limits of Puerto Rico, allegedly adulterated with water and salt, during the period between April 30, 1998 to April 30, 1999 (the "Class"), from the Commonwealth Court of Puerto Rico, Court of First Instance, Superior Court, San Juan Part (the "Commonwealth Court"), to the United States District Court for the District of Puerto Rico.

## I.   INTRODUCTION

On November 12, 2019 (the "Petition Date"), Southern Foods Group, LLC and certain of its affiliates (the "Debtors"), including Dean Foods Company ("Dean Foods") and Suiza Dairy Group, LLC ("SDG"), filed before the United States Bankruptcy Court for the Southern District of Texas, Houston Division, a voluntary petition for relief under the provisions of 11 U.S.C. Chapter 11, Case No. 19-36313 (the "Bankruptcy Case"), and as of that date have been managing their affairs and operating their business as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

Prior to the Petition Date, defendant Suiza Dairy, the owner and operator of a milk processing plant in Puerto Rico --previously owned by Dean Foods and/or affiliates-- was joined as codefendant in the consumer class action case commenced in April 1999, captioned *Guzmán Matías, et. al., v. Vaquería Tres Monjitas, Inc., et. al.*, Civil No. KDP1999-0798 (the "Civil Action"), pending before the Commonwealth Court. The controversy in the Civil Action is one over the liability of codefendants, including Suiza Dairy, to plaintiffs and the Class for damages in tort resulting from the alleged adulteration of milk.

After the Civil Action was filed, on or about 2002 Dean Foods sold the Suiza Dairy operation to Grupo Gloria and/or affiliated entities ("Grupo Gloria"), an industrial conglomerate of Peruvian investments with a business presence throughout Peru, as well as in Bolivia, Colombia, Ecuador, Argentina and Puerto Rico.  However, as part of the sales transaction, Dean Foods and SDG agreed to <u>indemnify</u> Suiza Dairy and/or Grupo Gloria if a monetary judgment was rendered against Suiza Dairy in the Civil Action.  As part of this understanding, Dean Foods and/or SDG also agreed to pay for the legal services of attorneys and of other professionals employed and retained to defend  Suiza Dairy's in the Civil Action (the "Indemnity Agreement").[2] Although a liability resolution has been entered against Suiza Dairy in the Civil Action -not yet final as the case was bifurcated- the damages, if any, suffered by plaintiffs and the Class still need to be assessed and monetized.

As known, removal of proceedings to bankruptcy courts is proper if it is "related to" the bankruptcy case. *See* 28 U.S.C. § 1334(b).  In the bankruptcy context, related-to jurisdiction exists

---

[2] The Debtors' agreement to indemnify Suiza Dairy and to continue paying for its legal fees arose prior to the Petition Date and is corroborated by the recent *Motion of Debtors for Entry of an Order Approving Procedures for the Retention and Compensation of Ordinary Courses of Business Professionals Nunc Pro Tunc the Petition Date* filed on November 27, 2019 in the Bankruptcy Case, at Docket No. 336 (the "Motion to Employ Professionals"). In this Motion to Employ Professionals, the Debtors seek and order from this Court approving procedures for the retention, compensation and employment of certain professionals, including the law firm of Adsuar Muñiz Goyco Seda & Pérez-Ochoa, PSC ("AMG"), Suiza Dairy's legal representatives in the Civil Action.  on December 20, 2019, the Court issued an Order approving the procedures set forth in the Motion to Employ Professionals. Docket No. 577.  According to the Order, within thirty (30) days from its entry, each Ordinary Course Professional was to provide Debtors' attorney with (i) a certification that the professional does not represent or hold any interest adverse to the Debtors or their estates; and (ii) a retention questionnaire (the "Required Documents"). The Debtors were ordered to submit a copy those documents to the court and serve them on the Reviewing Parties, as defined in the Order. The Reviewing Parties and other parties in interest shall were granted 14 days following such service to file any objections to the retention of the ordinary course professionals (the "Objection Deadline"). According to the Order, if no objections were received by the Debtors by the Objection Deadline, retention of the ordinary course professional was going to be deemed approved and effective as of the later of the Petition Date or the date the Ordinary Course Professional commenced work. As no objection to the retention and engagement of AMG was filed during the Objection Deadline, undersigned counsel is deemed "approved" as an ordinary course professional, *nunc pro tunc* to the Petition Date.

whenever "the outcome of [the] proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984). Here - at the very least - the Civil Action is related to the Bankruptcy Case given Dean Food's indemnity obligations to Suiza Dairy and/or directly to plaintiffs pursuant to the Indemnity Agreement. To that end, the outcome of the Civil Action could—indeed, almost surely will— affect the assets and liabilities of the estates being administered by this Court. It follows then that federal jurisdiction is proper because the Civil Action is related to the Bankruptcy Case. Accordingly, the Civil Action is removable pursuant to 28 U.S.C. §§ 1334 and 1452.

## II.   JURISDICTION AND VENUE

This Court has jurisdiction over this Notice and the removed proceeding pursuant to 28 U.S.C. §§ 1334 and 1452. The removed proceeding is a proceeding other than a proceeding before the Tax Court or a civil action by a governmental unit to enforce the government unit's police or regulatory power. Venue is proper pursuant to 28 U.S.C. § 1409 in the United States Bankruptcy Court for the Southern District of Texas, Houston Division, as it is related to the case *In re Southern Foods Group, LLC d/b/a Dean Foods*, Case No. 19-36313 (DRJ).

## III.   CASE BACKGROUND

1.   The Civil Action commenced on April 30, 1999 when plaintiffs filed a Complaint before the Commonwealth Court against defendants Suiza Dairy, Borinquen Dairy, Inc., (merged with Suiza Dairy prior to the filing of the Complaint) and Vaquería Tres Monjitas, Inc. ("Vaquería"), all companies in charge of the processing, distribution and sale of fresh milk in Puerto Rico. The Commonwealth of Puerto Rico, the Milk Industry Regulation Office ("ORIL" for its Spanish acronym), the Milk Industry Development Fund and its President, Mr. Luis Fullana

were also named defendants.³ The Complaint was subsequently amended on February 10, 2000 (the complaint, as subsequently amended, the "Complaint"), to clarify that only economic damages are being sought, with no compensation for physical injuries or emotional distress.

2. The Complaint was filed pursuant to the provisions of Articles 1802 and 1803 of the Puerto Rico Civil Code (Puerto Rico's general tort statute), P.R. Laws Ann. tit. 31 §§ 5141 and 5142, and Law 118 of June 25, 1971, as amended, known as the Puerto Rico Consumer Class Action Act ("Act 118"), which allows for double damages.

3. Plaintiffs' allegations are premised on the fact that on December 1998 a group of twenty-seven dairy farmers and farm administrators along with twelve milk haulers employed by the milk processing plants (only 2 of which were employed by Suiza Dairy) were charged and indicted by a federal Grand Jury with conspiracy to adulterate milk. The adulteration consisted of adding water to the raw milk to increase its volume and then salt, "at the farm level", to try to mask the adulteration. Plaintiffs claimed that as a result of said scheme, consumers purchased milk that was adulterated with water and salt and thus, could not be classified as "Grade A" or put into the market.⁴

4. On September 9, 1999, plaintiffs filed a motion seeking class certification and argued that Suiza Dairy and Vaquería were liable to the putative class as they: (i) were negligent in failing to detect the adulteration in the milk, which led to the processing of adulterated milk at the plant level; the same eventually reaching consumers in Puerto Rico; (ii) were negligent by failing to adequately train and supervise the personnel at their laboratories, who therefore were not capable of detecting the adulterated milk; (iii) used laboratory equipment that was not updated

---

³ On June 13, 2011, the Commonwealth Court dismissed the Complaint as to codefendants Milk Industry Development Fund and Mr. Luis Fullana. Thereafter, on May 24, 2012, Plaintiffs voluntarily dismissed the Complaint as to the Commonwealth of Puerto Rico and ORIL; the Commonwealth Court entered Judgment accordingly.
⁴ Suiza Dairy did not partake in the milk adulteration scheme and in fact assisted government authorities in the investigation leading to the Grand Jury indictment.

and/or state-of-the-art, therefore, incapable of detecting adulterated milk; (iv) were vicariously liable for its employees and or agents' fraudulent actions; and (v) placed a defective product in the stream of commerce.

5.  As a result, the Complaint alleged that because of defendants' fault and/or negligence consumers paid a price for adulterated milk that exceeded its fair value, therefore suffering an economic loss to be estimated in an amount not less than $10,000.00 (for each member of the class) and ascending to an aggregate of not less than $400,000,000.00.[5] However, prior to the hearing on the certification of the Class, plaintiffs amended these allegations, concluding that the economic loss suffered because of defendants' tortious conduct was estimated in an amount of not less than $200.00 (for each member of the Class).

6.  After several procedural matters, on August 7, 2002, the Commonwealth Court held an evidentiary hearing to consider plaintiffs' request for class certification. Although the Commonwealth Court issued a Resolution and Order denying the class certification (which was thereafter upheld by the Court of Appeals), on December 14, 2006, the Puerto Rico Supreme Court issued an Opinion reversing the Commonwealth Court's ruling and therefore granting class certification. See *Guzmán, et. al. v. Vaquería Tres Monjitas, et. al.*, 169 D.P.R. 705 (2006).

7.  Years later, on March 31, 2009, the Commonwealth Court issued a Resolution defining the Class as follows:

> "All consumers of fresh Grade A milk, natural persons, and residents and domiciled in Puerto Rico, who purchased and paid for fresh milk manufactured, pasteurized, elaborated, processed and sold by Suiza Dairy, Vaquería Tres Monjitas and Borinquen Dairy, within the geographical limits of Puerto Rico, that was adulterated with water and salt, during the period between April 30, 1998 to April 30, 1999 (i.e. the "Relevant Period")."

---

[5] Also, the Complaint originally sought an award for mental anguish and emotional distress suffered by plaintiffs and the Class --calculated in the aggregated amount of not less than $400,000,000.00. However, plaintiffs eventually chose to voluntarily dismiss said claim for relief.

8. After conducting preliminary discovery, on March 18, 2011, Suiza Dairy filed a Motion for Summary Judgment seeking dismissal of all claims on the grounds that plaintiffs had no proof or evidence to establish: (i) that adulterated milk had reached Suiza Dairy's milk processing "silos", and consequently, that Suiza Dairy sold adulterated milk to the public, or the amount of adulterated milk that was allegedly sold to the public; (ii) that the damages claimed by plaintiffs were not recoverable under Article 1802 of the Puerto Rico Civil Code in view of the "economic loss" rule and that damages sought by the class could only be recovered through a redhibitory action (which was in all events time barred); (iii) that plaintiffs had failed to identify the updated equipment and advanced testing that would have detected adulteration in the milk; and (iv) that defendants were not vicariously liable under Article 1803 of the Puerto Rico Civil Code as the fraudulent act of adulterating milk was not part of the duties and responsibilities of Suiza Dairy's employees.

9. On June 15, 2011, plaintiffs filed their Opposition to Suiza Dairy's Motion for Summary Judgment and through order dated August 17, 2011, the Commonwealth Court denied Suiza Dairy's Motion for Summary Judgement. The Commonwealth Court also ordered the bifurcation of the case to first adjudicate the liability question and thereafter, if necessary, to proceed to a second stage to assess the damages suffered by plaintiffs and the Class, if any.

10. The parties filed a Joint Pre-Trial Memorandum on November 21, 2011, later amended on February 24, 2012, and the Commonwealth Court held evidentiary hearings on the liability phase from November 2012 through September 2013.

11. Almost one full year later, on August 4, 2014, the Commonwealth Court issued a Resolution finding Suiza Dairy and Vaquería were negligent and thus liable to plaintiffs. The Resolution is not final, as it is subject to judicial review once and after a ruling on damages is rendered by the Commonwealth Court, and a <u>final</u> judgment is entered.

12. The parties then conducted discovery on damages and both Suiza Dairy and Plaintiffs retained experts who rendered reports on the alleged "economic loss" recoverable by the Class.[6]

13. Trial on damages is scheduled to begin on May 27, 2020. Once a final judgment is entered, the appellate process begins, and could take many years.

14. After the Civil Action was filed, Dean Foods sold the Suiza Dairy operation to Grupo Gloria and, as part of the sales transaction, Dean Foods issued the Indemnity Agreement to indemnify Suiza Dairy and/or Grupo Gloria (without exceptions and/or limitations) if a monetary judgment was rendered against Suiza Dairy in the Civil Action.

15. On November 12, 2019, the Debtors, including indemnitor Dean Foods, filed the Bankruptcy Case seeking Chapter 11 protection.

16. Dean Foods has stated in press releases that it has received a commitment of approximately $850 million in debtor-in-possession financing from certain existing lenders led by Rabobank.[7] Dean Foods is working toward an orderly and efficient sale of the company, a process that could take up to a year to complete based on statements that have been issued by Dean Foods. Dairy Farmers of America (DFA) — the nation's largest dairy cooperative — has engaged in advanced discussions for the potential purchase of Dean Foods.[8]

---

[6] Particularly, upon the employment of a "fluid recovery" methodology, plaintiffs' expert, Mr. Carlos Frontera estimated the damages suffered by the Class (i.e. "economic loss") in the aggregate amount of $84,813,523.00, of which **$26,400,000.00** are allocated to Suiza Dairy. On the other hand, Suiza Dairy's expert, Dr. Leonardo Giacchino, rendered a rebuttal report challenging the calculations made by plaintiffs' expert and concluding that, if any, the estimated damages range is between $23,000.00 and $1,800,000.00.

[7] *See* https://www.abfjournal.com/dailynews/rabobank-leads-850mm-dip-facility-for-dean-foods/; https://www.latimes.com/business/story/2019-11-12/milk-company-dean-foods-files-for-chapter-11-bankruptcy.

[8] *See e.g.* Emergency Motion Of Debtors For Entry Of Interim And Final Orders, Pursuant To 11 U.S.C. §§ 105, 61, 362, 363, 364, 503, 506, 507 And 552 (I) Authorizing The Debtors To (A) Obtain Senior Secured Superpriority Post-Petition Financing, And (B) Use Cash Collateral, (II) Granting Liens And Superpriority Administrative Expense Claims, (III) Providing Adequate Protection To Prepetition Secured Parties, (IV) Scheduling A Final Hearing, And (V) Granting Related Relief. **Docket No. 72** of Case 19-36313.

## IV.   GROUNDS FOR REMOVAL

Suiza Dairy may remove the Civil Action to this Court under 28 U.S.C. § 1452 and Rule 9027 of the Federal Rules of Bankruptcy Procedure.  Section 1452 states that "a party may remove any claim or cause of action in a civil action . . ., to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452.  In turn, Section 1334 provides, in pertinent part, that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).

In enacting § 1334(b), Congress intended to grant comprehensive jurisdiction to bankruptcy courts allowing them to deal efficiently and expeditiously with all matters connected with a bankruptcy estate. *Celotex Corp. v. Edwards*, 514 U.S. 300, 208 (1995). The Supreme Court has provided that "related to" jurisdiction include: "(1) causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. §541, and (2) suits between third parties which have an effect on the bankruptcy estate." *In re Industrias Vassallo, Inc.,* 2015 WL 4626763, at *3 (Bankr. D.P.R. 2015) (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, n. 5 (1995)).

Like most circuits, the First Circuit derives its related-to jurisprudence from *Pacor. See In re Parque Forestal, Inc*., 949 F.2d 504, 509 (1st Cir. 1991); *In re G.S.F. Corp.*, 938 F.2d 1467, 1475 (1st Cir. 1991); *In re Santa Clara County Child Care Consortium*, 223 B.R 40, 45-46 (B.A.P. 1st Cir. 1998) (applying the *Pacor* standard). The *Pacor* standard is broad, encompassing "the entire universe of matters connected with bankruptcy estates," *In re Boston Reg'l Med. Ctr., Inc.*, 410 F.3d 100, 105 (1st Cir. 2005), and accordingly the proceeding "need not necessarily be against the debtor or…the debtor's property" so long as the "outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and…in any way impact[] upon the handling and administration of the bankrupt estate." *Pacor*, 743 F.2d at 994.

To that end, both the First Circuit and the Fifth Circuit have stated that a matter is *related to* a case under title 11 if "the outcome of those proceedings could *conceivably* have any effect on the estate being administered in bankruptcy." *In re Santa Clara*, 223 B.R. at 44-45. Even when there is a possibility that a suit may ultimately have no effect on the estate, this possibility is not enough to conclude that there would be no *conceivable* effect. *See In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987). The test is whether an effect is possible or conceivable; certainty or even likelihood of such an effect is not required. *See In re Canion,* 196 F.3d 579 (5th Cir. 1999); *see also Voya Institutional Trust Company v. University of Puerto Rico,* 266 F. Supp. 3d 590 (D.P.R. 2017) ("[t]o be clear, Voya need not establish with 'certainty, or even [a] likelihood' that the actions before this Court will affect the Commonwealth's bankruptcy estate to establish 'related to' jurisdiction."). Consequently, even proceedings with only a contingent or tangential effect on the estate meet the broad jurisdictional test for related-to. *In re Canion*, 196 F.3d at 587, n. 30. Simply stated, if the determination of the controversy *could* have an effect on the bankruptcy estate, the controversy is a "related matter" that shall be referred to the bankruptcy court pursuant to 28 U.S.C. § 157(a).

It is hornbook law that an indemnity obligation that affects the property of debtors gives rise to "related to" jurisdiction under 28 U.S.C. § 1334(b). *See In re G.S.F. Corp.*, 938 F.2d at 1475-76 (potential indemnity claim against the estate was sufficient to provide related-to jurisdiction); *Philippe v. Shape, Inc.*, 103 B.R. 355, 356-358 (D. Me. 1989) (third-party claims against a corporate debtor's insiders were determined to be within related-to jurisdiction because if found liable to the third-party plaintiff, the insiders unconditionally were entitled to indemnification under the debtor's by-laws. Such liability "would necessarily affect the administration of the ... bankruptcy estate, as some part of the estate otherwise owing to existing creditors would be susceptible to being diverted to meet this indemnity obligation."); *see also Lone*

*Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 386-87 (5th Cir. 2010) (claims for indemnification against a debtor create "related to" bankruptcy jurisdiction); *In re El Paso Refinery, L.P*, 302 F.3d 343, 349 (5th Cir. 2002) (litigation against former owner of the debtor that would set off a "chain of indemnification provisions . . . leading directly to the [d]ebtor" fell within bankruptcy jurisdiction); *In re Canion*, 196 F.3d at 586-87 ("a claim between two non-debtors that will potentially reduce the bankruptcy estate's liabilities" supports related-to jurisdiction.)

Some courts do not even require a proof of claim to be filed at all, finding related-to jurisdiction when there is merely "the prospect of an effect on distributions" and the "potential for an indemnity claim." *Five Mile Capital II SPE ESH LLC v. Cerberus Capital Mgmt. (In re Extended Stay Inc.)*, 435 B.R. 139, 150 (S.D.N.Y. 2010); *see also, e.g.*, *SPV OSUS, Ltd. V. UBS AG,* 882 F.3d 333, 342 (2nd Cir. 2018) (finding a conceivable effect on the estate notwithstanding the failure to file a proof of claim and explaining that "failure to file claims prior to the bar date is not fatal" to removal).

Moreover, in *TD Bank, N.A. v. Sewall*, 419 B.R. 103 (D. Me. 2009), the court found that related-to jurisdiction existed when the plaintiff in the proceeding held a claim against the debtor's estate, because the lawsuit would, if successful, "change [the plaintiff's] status vis-à-vis other creditors, the [debtor's] relationship to the underlying debt, and the amount of the [debtor's] liabilities." *Id.* at 108.

Based on the preceding legal authorities, it is beyond dispute that the Civil Action is "related to" the Bankruptcy Case because it could be *conceivably* affected by it. Dean Foods owes Suiza Dairy an indemnity obligation pursuant to the Indemnity Agreement. According to the Indemnity Agreement, Dean Foods agreed to indemnify Suiza Dairy and/or Grupo Gloria if a monetary judgment was rendered against Suiza Dairy in the Civil Action. Dean Food's obligation to provide indemnification is unconditional and not contingent on the filing of a separate action to

enforce the Indemnity Agreement. Dean Foods also agreed to compensate the attorneys and professionals employed and retained to prosecute and/or assist in the Civil Action. As a result, any costs or expenses incurred by Suiza Dairy to defend the Civil Action, as well as any monetary judgment rendered against it, will affect the Debtors' property, since a damages award against Defendant could require the Debtors' estate to indemnify or make contribution to Suiza Dairy, increasing the estate's own liabilities.

The outcome of the Civil Action could, almost surely will, affect the assets and liabilities of the estate being administered by Judge Jones in the Bankruptcy Case. Plaintiffs' seek a judgment against Suiza Dairy in the amount of $26,400,000.00, which, if doubled as per Act 118, amounts to $52,800,000.00, a monetary compensation that, if allowed by the Commonwealth court or any other forum, no doubt will have an adverse effect and serious impact in Dean Food's reorganization efforts. *See SPV OSUS, Ltd.* 882 F.3d at 341 ("[I]f SPV were successful in its claims against UBS, it would reduce the amount it is owed as a creditor of the BLMIS/Madoff estate.").

Additionally, the filing of any claim that the plaintiffs file[9] (or any claim that Suiza Dairy filed on their behalf pursuant to Rule 3005 of the Federal Rules of Bankruptcy Procedure) will require the examination of the Civil Action.[10] Because of the potential magnitude of these claims, the Debtors need a timely adjudication of the Civil Action in order to move forward with the Bankruptcy Case, and its planned sale of the company's assets. Without a final and timely adjudication of the issues raised in the Civil Action, and in the proofs of claim to be filed and/or filed in the bankruptcy case, the extent of any indemnity obligations under the Indemnity Agreement will remain unknown and undetermined, which will ultimately adversely impact

---

[9] The Debtors scheduled Plaintiffs as nonpriority creditors with a contingent, unliquidated and disputed claim for an undetermined amount. *See* **Docket No. 789** of Case 19-36313 at pages 160 and 252.

[10] Rule 3005 provides that "if a creditor does not timely file a proof of claim under Rule 3002 (c) or 3003 (c), any entity that is or may be liable with the debtor to that creditor…, may file a proof of claim…" Fed. R. Bankr. P. 3005.

Debtors' plan and reorganization efforts, which is a substantial right provided to Debtors by Title 11.

Under these circumstances, the Court's exercise of federal related-to jurisdiction would be entirely consistent with the "comprehensive jurisdiction" provided to bankruptcy courts generally. *Celotex*, 514 U.S. at 308.

## TIMELINESS

This Notice is timely filed pursuant to Fed. R. Bankr. P. 9027 (a)(2), which requires that "a notice of removal may be filed … 90 days after the order for relief in the case under the Code…" Here, the Bankruptcy case was filed on November 12, 2019.

## NO WAIVER

Nothing in this Notice of Removal should be interpreted as a waiver or relinquishment of Suiza Dairy's rights to assert any defenses or objections available under state or federal law. If any question arises as to the propriety of the removal of this action, Suiza Dairy request the opportunity to brief any disputed issues and to present further evidence and oral argument in support of their position that this case has been properly removed to this Court.

## OTHER COMPLIANCE

Pursuant to P.R. LBR 9027-1, Suiza Dairy will file with the Clerk of the Court "true and accurate copies of all pertinent papers filed in the court from which removal is sought and a certified or attested copy of all docket entries in that action, if available, within fourteen (14) days of filing the notice of removal." Since all process and pleadings are in Spanish and given the voluminous nature of the exhibits to be filed, Suiza Dairy will request an additional extension of time to submit the required English translations of these materials. Further, Suiza Dairy will file with the Clerk of the Court "a list containing the name of each party to the removed case and the names, addresses, and telephone numbers of their counsel …".

Suiza Dairy will promptly serve written notice of this Notice of Removal on the Plaintiffs and other parties of record in the Civil Action and will file a copy of the notice with the Clerk of the Commonwealth Court pursuant to Fed. R. Bankr. P. 9027 (b) and (c).

**WHEREFORE**, Suiza Dairy, Corp. respectfully gives notice that, pursuant to 28 U.S.C. § 1452 and Rule 9027(a) of the Federal Rules of Bankruptcy Procedure, the Civil Action is removed to this Court from the Commonwealth court.[11]

**RESPECTFULLY SUBMITTED.**

**WE HEREBY CERTIFY** that on this 7th day of February, 2020, we caused a true and correct copy of Suiza Dairy's Notice of Removal to be served via electronic mail and certified mail, return receipt requested on (i) counsel for the plaintiffs (a) **Hector L. Moreno-Luna**, P.O. Box 1364, Utuado, P.R. 00641, bufetemoreno@hotmail.com; (b) **Domingo Donate-Pérez**, P.O. Box 1322, Hatillo, P.R. 00659-1322, lcdodonate@gmail.com; and (c) **Marangely González-González,** P.O. Box 675, Utuado, P.R. 00641, margangelygonzalez@hotmail.com; and on (ii) counsel for codefendant **Vaqueria Tres Monjitas** (a) Harold D. Vicente and Ivelisse M. Ortiz-Moreau, Vicente & Cuebas, P.O. Box 11609, San Juan, P.R. 00910-1609, hvicente@vclawpr.com; iortiz@vclawpr.com; and (b) Miguel Simonet-Sierra, Simonet Sierra Law Office, Maramar Plaza, 101 Ave. San Patricio, Suite 1120, Guaynabo, P.R. 00968.

---

[11] Suiza Dairy also informs that it will soon be filing a motion to change venue to the Bankruptcy Court in the Southern District of Texas, Houston Division, where the Bankruptcy Case is pending.

In San Juan, this 7th day of February, 2020

**ADSUAR MUÑIZ GOYCO
SEDA & PÉREZ-OCHOA, PSC**
P.O. Box 70294
San Juan, Puerto Rico 00936-8294
Tel: 787.756.9000
Fax: 787.756.9010
Email: epo@amgprlaw.com
sdejesus@amgprlaw.com
larroyo@amgprlaw.com

By: */s/Eric Pérez-Ochoa*
Eric Pérez-Ochoa
USDC-PR No. 206314

*/s/Shylene De Jesus*
Shylene De Jesus
USDC-PR No. 219704

*/s/Lourdes Arroyo Portela*
Lourdes Arroyo Portela
USDC-PR No. 226501